Please the court. My name is Lucian Gillum. I represent John Marlow in an appeal of a grant of motion, denial of a motion to compel, denial of a motion for sanctions, denial of a motion under Rule 56D, grant of summary judgment, and a trial verdict. This was a combined whistleblower claim under the Arkansas state law and free speech and petition claim under both Arkansas Civil Rights Act and 42 U.S.C. 1983. The case was basically dominated by discovery issues. The decision maker in this case was a lady named Chief Laura Rash. She appeared for deposition. We got about 144 minutes into that she was represented in that deposition by counsel from the Arkansas Municipal League and she simply got up and left before her deposition could be completed. Subsequent to that we moved to extend discovery and we had issued a subpoena to a gentleman named Michael Garlington who was an Arkansas state police investigator who had investigated the illegal use of force that underlay this whole case. The reason we wanted to talk to him was that after Chief Rash's deposition it was apparent that she was not going to be cooperating and we did want to go back and complete her deposition. But before we did that we wanted to... Did you ever move to compel the resumption of her deposition? Yes, sir, we did. The motion was styled. What happened is we filed a motion to compel Garlington's deposition and extend discovery after he'd objected. And then at the time that they moved for summary judgment while that first motion was pending we filed a verified motion for sanctions and part of the relief there we saw it I mean it was probably should have been styled a verified motion to compel and for sanctions because part of the relief we saw was to compel the completion of Chief Rash's deposition. So would you tell me counsel how you were prejudiced by this? Yes, sir. Laura Rash was the decision maker. So her intent is at issue and as in most employment cases that is the issue in the case. Now in Burdine the courts stated that you know you may well be able to establish pretest simply through skillful cross-examination of the decision maker. And so in this case now you know Judge Miller said that I think 2 hours and 14 minutes was enough, right? And I would say that if you know that you only have 2 hours and 15 minutes to depose the person that may be enough. But the federal rules allow for 7 hours. There wasn't any set end time for this deposition. So she walked out of a deposition midstream before we got to complete it. Had we known we only had 2 hours and 15 minutes that's a completely different deposition than the one that got taken. And so we didn't get to get into issues. She testified at trial too, didn't she? Yes, sir. She did. And so didn't you have every opportunity to cross-examine or examine? I don't know if she was called in your case or theirs. Um, we did have the opportunity to cross-examine her there. But by then what had happened is that Judge Miller had granted summary judgment on the First Amendment speech claims and petition claims and also those under the Arkansas Constitution. So the only claim remaining was the Whistleblower Protection Act. Okay, so what specifically could you have elicited from her with respect to the um, you know, as you know, these cases are frequently proved through circumstantial evidence. But don't you need more than speculation in order to show your prejudice as Judge Arnold was alluding to? Don't you need a little more than speculation she might have said X? Well, I don't, what I would say is that the standard for a Rule 56 affidavit is that you need to show, you know, what discovery you were seeking, why you couldn't get it, what efforts you made to get it, and how that could make a difference in the case. But the case law also says that we're not required to be psychic. You know, we can't ultimately know what Chief Rasch is going to say in her deposition until she has said it. And so what we did was we identified that, look, this is the decision maker. She walked out before her deposition was and then we talked about, particularly in the reply, the kinds of evidence you may use to establish pretext. You know, failure to follow normal procedures, timing, just various kinds of circumstantial evidence, treatment of other people under those procedures. And you know, for instance, one thing we didn't get to talk to was, you know, she's the one, she's saying that he's fired because of this policy of do not disseminate a video without your supervisor's position or permission. And it would be nice to talk to her about, is that normally a termination offense? Because if it's not, that would beg the question of why is he getting terminated? And more importantly, why is he getting terminated for disseminating a video when the gentleman who is in the video beating a man who has just been in a high-speed collision, who's sitting on the ground non-resistant with a flashlight? Why is it that times doesn't get fired, but the guy who disseminates the video of that conduct? Isn't the fatal flaw in your theory of the case that your client, there's no evidence that he disseminated the video for the purpose of bringing about a public good, you know, such as firing the officer who did the beating? The evidence, as I understand it, is he gave it to this other, I think, officer as a trophy. Isn't that the fatal flaw in your whole theory? There is some evidence of that, yes, your honor. But is there any evidence that he was turning it over to uncover a bad act or some public good? Um, your honor. He said it was just a trophy, did he not? There was, there was a recording where he had said that. Yes. It was, it was a recording that was made prior, you know, near the time of his termination. What was his testimony? And he, his testimony was that he wanted to get it to the city council, I believe. But the problem is, is that what happened on summary judgment is we'd filed the motion to compel Mr. Garlington's deposition and a motion to extend discovery. That motion wasn't acted on. So then we filed the motion, verified motion for sanctions and for relief under Rule 56D. And even if the judge was going to not let us conduct more discovery, he should have allowed us to respond to the motion for summary judgment. Because we hadn't filed the full response to motion for summary judgment. He just simply kind of summarily ruled on, on the motion to extend discovery, the motion to compel, the verified motion for sanctions and relief under Rule 56D and to compel her deposition, and then ruled on the summary judgment. You know, it would have been, you know, if he had refused to do any of those things, we still should have been given permission to have another two weeks to respond to the actual summary judgment motion. That's why when you look in the record, you don't see a full Rule 56F response. You know, and in the Eastern District, you know, you have to do a statement of undisputed facts and responses as though it's a request for admission. And you don't see that in this record because we'd filed the Rule 56D motion. So part of the relief we're requesting here is that even if we don't get more discovery, we should have at least got the chance to respond to summary judgment. Because we did have a good faith basis for filing this. I mean, Chief Rash walked out of a deposition without a protective order. She didn't file a protective order later on. And the rule is that you just can't walk out of a deposition because you don't like the questions. But if I may, if I may, Counsel, can we get returned for a moment to the Barrett's and Judge Gruner's question. My question is similar. What particularized message was it that your client was trying to convey by handing a table? I think what he was hoping is that basically some of the evidence at trial was that he had complained about the treatment of a gentleman named Leon Betz earlier prior to this. And from what he could tell, nothing was done. And the relationship between Times and the Chief was extremely close. And so he was hoping that if it went to the City Council, something would get done. Because, you know, although Betz was bad, what happened with Times and the gentleman who was already injured, already down, incoherent, Times was literally standing over him, beating him with a flashlight. And something needed to be done about him. But what's the evidence in the record? Well, I mean, in summary judgment, the evidence is not in the record yet because we'd filed a motion to compel, a motion to extend discovery, and filed a motion for relief under Rule 56D. So we never did a full response to that summary judgment motion. Well, let me follow up. If I'm understanding what you're saying is that any evidence that this was an expressive, this was a matter of public concern, came out at trial, but was not in the summary judgment record. Yes, ma'am. So, and I think this is all wrapped, all of your arguments about what happened procedurally are wrapped up around in this. But what could you have gotten out during the discovery, the summary judgment discovery that would have, that would have been evidence of that this was a matter of public concern? Other, I mean, because what it came out was your own client's testimony. Well, at trial. At summary judgment, what we could have done is there's two things. One is that in Heffernan versus, I think it's the city of Patterson or something like that, there was an individual who was terminated because they were carrying a, you know, a political campaign sign. And they were, they literally intended no message. They'd gone to get it for their mother. They were taking it to their mother. Somebody saw them, reported it up, and they were fired because they were engaged in First Amendment protected activity. So the first thing is that we could have gotten into Chief Rash's perceptions more. And she did testify in her deposition in part that at first she said he was fired because he got that video to the city council. Now, the next thing is that because we didn't file a full summary judgment response, we were relying on Rule 56 D or F, I always get them confused because Arkansas uses one. But we could have submitted an affidavit from John Marlowe explaining his intent. And that would have been a fact dispute. I mean, he said one thing on a recording when he was trying to save his job. But we could have presented his full intent at summary judgment if we'd been allowed to file a response, which we didn't get to do. We should have been allowed to file a response. Because posing the decision maker is always, always going to be important. And there was just, we should have gotten to depose Chief Rash or at least depose Mr. Garlington. Thank you. Very well. Thank you, Mr. Gillen. Morning, Mr. Wren. May it please the court. My name is Keith Wren. I represent the appellee in this matter, the city of Clarendon et al. Fundamentally, the problem with the plaintiff's arguments here before this court is the same as the plaintiff's arguments at the district court level is that the plaintiff has pointed out nothing that would have changed the outcome of the district court's ruling or the trial of this matter. With regard to Chief Rash's deposition, I have not heard anything that tells me what area of inquiry the plaintiff could have gone into that would have changed anything. Did you interpret the motion for sanctions to include a motion to compel as to the chief? I think so, Your Honor. I think that's the whole point is that if the district court were so inclined to do that, that she would have had to have answered their questions, whatever they were. Was there such a motion made to compel her testimony? That's the question. My recollection was there was a motion for sanctions that asked for various forms of relief. Honestly, I can't sit here or stand here right now and say that it was also a motion to compel. Okay. But it was definitely a motion for sanctions for her walking out of the deposition. But again, it wasn't as if the plaintiff didn't have a full and fair opportunity to ask her any questions that he wanted to about this case. She sat for a deposition for about two and a half hours, and it was only as it was all winding up and the plaintiff's attorney, who was not Mr. Gillum, but another attorney, began to threaten her with punitive damages, to sue her for punitive damages, and got up and left the deposition. Again, she testified at trial. This matter did go to trial, despite the fact that the plaintiff did not file a response to the summary judgment motion. They did quite well for not filing a response. The case was allowed to go to trial, and Chief Rash testified twice at trial, both in the plaintiff's case and the defendant's case. She was thoroughly cross-examined. Over my objection, questions were asked of her at trial about her getting up and leaving the deposition. So anything that needed to be covered certainly was covered at trial, and yet we've not heard anything in this record about what it was that would have made any difference from that testimony. With regard to Special Agent Garlington of the Arkansas State Police, at the time that the plaintiff wanted to depose him, the criminal matter was still pending. Special Agent Garlington was not involved at all in the plaintiff's termination, so anything he had to say would not be first-hand knowledge. It would be anything that he had gathered. Ultimately, by the time this case came to trial, the criminal matter had been resolved. Special Agent Garlington testified. I think various parts of the Arkansas State Police investigative file were introduced. So again, whatever he might have had to say wouldn't have had anything to do with the plaintiff's termination, but would have only had to do with the underlying criminal matter, which, as my opposing counsel has pointed out, involved a claim of excessive force against some other officers. Mr. Ren, Mr. Gillum says that at the summary judgment stage, he didn't respond and that he could have responded with some public purpose reasons for the dissemination of the video. At trial, did anything, was there any evidence that he had a public purpose in disseminating the video? Did anything like that come out at trial? Yes, and I'm glad you brought that up, Your Honor, because that information was available to the plaintiff at the summary judgment stage. The plaintiff gave the video to a Monroe County, Arkansas, deputy sheriff named Ricky Thorne. Thorne had been deposed prior to the summary judgment motion, and according to Thorne, he said that the plaintiff gave him the video for the purpose of Deputy Thorne to take it to the city council or a city council member. So that information was available at the summary judgment stage, and Thorne testified to that at the trial. The jury chose not to believe him, and I think that basically, the problem for the plaintiff, both at the summary judgment stage and at the trial, was the evidence that came out of his own mouth hurt him more than anything. As is in the record, the plaintiff surreptitiously recorded the meeting with the chief of police in which he was terminated. During that meeting, he repeatedly told the chief and others in the room, a council member and later other officers, that he did not turn over the video for some public purpose or some noble reason, but simply so that Deputy Thorne could have a trophy of this exciting event. So on that basis, that was the basis for the district court granting summary judgment on the... When you filed the summary judgment, they responded with the 56D, we need more discovery, right? That is my recollection. Is there any case law or rule or anything that requires them to also respond to the summary judgment prior to the resolution of the 56D motion? I do not know the answer to that, Your Honor. But I can tell you this, that as it worked out, the ruling... Well, the ruling on the summary judgment motion was close, very close in time to when this matter was set for trial. As it all worked out, partially due to the pandemic and other matters at the district court, this thing got delayed for a long time and it finally went to trial, it was last summer. I think that this was filed back in maybe 2019. So it was quite an old case, but that is my recollection of how that came out. I do not know the answer about whether or not the 56D motion must be ruled on prior to ruling on summary judgment. With regard to the claim that the First Amendment claim was a petition for redress of grievances, that just simply does not matter. The bottom line is that nothing... Well, from the plaintiff's own evidence was that he did not do anything, whether it's for petition of redress of grievances or for retaliation purposes, that he did anything that was a matter of public concern. I don't see anything in the record that indicates he was actually making a petition claim. If I recall correctly, that was... I know that that is definitely on the appeal. I think it may have been in the motion for new trial. Right, but I mean, it's a little bit late after the trial to make a new claim. Perhaps I'm wrong, but I don't think there was a claim made. But that's all right, I'll read the record. And then finally, the plaintiff's claim for a new trial on the Arkansas Whistleblower Act claim. The argument is that there is no element of intent for an Arkansas Whistleblower Act claim. I think that that's simply not supported by the law. The Act in itself says that the reporting must be in good faith, and it gives a statutory definition of what is meant by good faith for the Act, one of which is that the reporting cannot be for a frivolous purpose. And certainly, if the purpose of giving the video to Deputy Thorn was so that he could have a trophy would, I think, definitely fit in the category of frivolous. So, based on that, we believe that the rulings of the district court should be affirmed and that the motion for new trial should be denied. And if there are no further questions, I will stand down. Hearing none, thank you, Mr. Brown. Mr. Gillum, your rebuttal. Thank you. You know, the kind of evidence we could have gotten through continued deposition of Chief Rash or deposition of Garlington includes false explanations, shifting explanations, how policies applied, why it was applied to my client in the way that it was applied to him, what explains the difference in treatment between times who committed what is objectively a far more serious act that could have killed somebody by beating them when they're near unconscious versus giving up a video, what the Chief's perception of the reasons for Marlowe's conduct was, which is very important under Heffernan, you know, and had we had the chance to file a full summary judgment response, we could have put in that he was hoping this would go to the City Council and which would have explained his public purpose or his wide speech on a matter of public concern. You know, in addition, you know, gosh, the court, I mean, walking out of a deposition because you don't like the questions answered. I mean, the whole idea of a legitimate non-discriminatory reason is that people don't want to answer the question honestly. And if you don't offer a legitimate non-discriminatory reason at all, that's a failure to articulate and plaintiffs are generally entitled to judgment. I mean, that's walking out of a deposition because you don't like the questions. That in itself should create an inference. We did move to compel at Appendix 264 through 266 and Garlington's, everything said to him was admissions by employees of the city. Very well. Thank you, counsel. We appreciate both counsel's appearance and argument today. Case is submitted and we'll issue an opinion in due course.